Gertrude Waterbury, Appellee, v. Chicago, Milwaukee & St. Paul Railway Company and Northwestern Elevated Railroad Company, Appellants.

### Gen. No. 22,782.

1. Railroads, § 257*—*what was obligation at common law to provide and maintain crossings at highways.* At common law a railway company constructing its line of road was under obligation to provide safe and convenient crossings at highways then existing, but no duty devolved upon it to construct and maintain a crossing over a highway subsequently created.

2. Railroads, § 258*—*what is meaning of word "safe" in act relating to construction and maintenance of railroad street crossings.*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The word "safe" in Hurd's Rev. St. ch. 114, sec. 8 (J. & A. ¶ 8820), relating to the construction and maintenance of crossings of railroads over highways and streets, means "reasonably safe."

3. RAILROADS, § 258*—*what is duty of railroads under statute to provide safe and convenient crossings at highways.* The statutory duty of railroads to provide safe and convenient crossings at highways extends not only to crossings in existence when the railroad was constructed but to those created afterwards as well, and includes those in cities as well as those in rural communities.

4. RAILROADS, § 258*—*what care required in construction and maintenance of highway intersection.* Under Hurd's Rev. St. ch. 114, sec. 8 (J. & A. ¶ 8820), providing that at all railroad crossings, highways and streets, railroads shall construct and maintain such crossings so that at all times they shall be safe as to persons and property, railroads are required to exercise reasonable care in the construction and maintenance of highway intersections, and they are entitled to notice, either actual or constructive, of a defective condition, as a prerequisite to a recovery against them for damages for personal injuries sustained by a pedestrian due to a defective condition of such portion of the highway.

5. INSTRUCTIONS, § 38*—*when instruction should not be given in exact language of statute.* Where a modified construction has been placed upon a statute by the Supreme Court, an instruction in the language of the statute should be framed accordingly, as otherwise it would be apt to mislead the jury, and in such a situation the better practice is to instruct the jury as to the legal effect of the statute.

6. RAILROADS, § 257*—*when not incumbent upon railroad to maintain roadway in reasonably safe condition for pedestrians.* Where a railroad company provides a sidewalk on each side of the street at a crossing over its right of way in a city, it is not under any duty to maintain the roadway allotted to vehicles and similar traffic in a reasonably safe condition for pedestrians.

7. RAILROADS, § 257*—*when question for jury whether plank road over crossing is reasonably safe for vehicle traffic.* In an action by a pedestrian to recover damages for personal injuries sustained as the result of tripping on a defective plank in the plank portion of the roadway over the railroad right of way allotted to vehicles and similar traffic, while attempting to pass over the crossing to defendant's station, *held* that it was a question for the jury whether or not the plank road was reasonably safe for vehicle traffic.

8. RAILROADS, § 257*—*when instruction on nonliability of railroad company for injury to pedestrian passing over crossing on right of*

*way is erroneously refused.* In an action by a pedestrian to recover damages for special injuries sustained as the result of stepping on a defective plank in the portion of the roadway of a crossing over defendant's right of way allotted to vehicles and similar traffic, after passing from the sidewalk on one side of a street over the right of way, and while on her way to the station, *held* that an instruction that if the defendant did not expressly or impliedly invite the public to cross the street at and over their right of way, then they were not bound to keep the whole crossing in a reasonably safe condition for pedestrians, but they had discharged their duty if they exercised ordinary care to keep their sidewalks in a reasonably safe condition for pedestrians and the middle of the crossing in a reasonably safe condition for vehicle and similar traffic, and that if defendant did not expressly or impliedly invite the public to cross the street and it had exercised ordinary care to maintain the crossing where the plaintiff fell in a reasonably safe condition for vehicle and similar traffic, then defendant was not guilty, was improperly refused.

Appeal from the Circuit Court of Cook county; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1916. Reversed and remanded. Opinion filed October 9, 1917. Rehearing denied October 19, 1917.

ADDISON L. GARDNER and SHEPARD, McCORMICK, THOMASON, KIRKLAND & PATTERSON, for appellants; WEYMOUTH KIRKLAND, of counsel.

EDWARD MAHER and HARVEY E. WYNEKOOP, for appellee; OLIVER R. BARRETT and FRANCIS L. DAILY, of counsel.

MR. JUSTICE McDONALD delivered the opinion of the court.

Appellee brought suit and recovered judgment against appellants for injuries sustained in a fall while crossing Foster avenue at its intersection with appellants' tracks, in the City of Evanston.

Foster avenue runs east and west, and is crossed at grade by defendants' three tracks, running in a northerly and southerly direction, about midway be-

378    Appellate Courts of Illinois.

Waterbury v. C., M. & St. P. Ry. Co. et al., 207 Ill. App. 375.

tween Sherman and Maple streets. It has a forty-foot roadway paved with macadam, except where it crosses defendants' right of way, at which place it is planked for a width of about thirty feet across the entire right of way, leaving an open space of ground of about five feet on each side of the planking. The sidewalks on both sides of Foster avenue are of concrete, except where, like the street, they are planked across defendants' right of way. Between the sidewalk and the curb on each side of the street there is a grass plot or parkway. At the time of the injury, defendants' easterly track was used for southbound and the middle for northbound traffic, and the westerly track for switching purposes. A railway station is located just north of Foster avenue, between the north and southbound tracks.

On September 14, 1912, about noon, plaintiff was walking along the south sidewalk of Foster avenue. Upon reaching a point directly south of the station, plaintiff turned north to cross the plank road on her way to the station, in doing which she tripped over a splinter which protruded from one of the planks in the road, causing her to fall and sustain injury.

This action was brought under section 8 of ''An Act in Relation to Fencing and Operating Railroads,'' ch. 114, Hurd's Rev. St. of Illinois, 1915-16 (J. & A. ¶ 8820), which is as follows:

''Hereafter, at all of the railroad crossings of highways and streets in this State, the several railroad corporations in this State shall construct and maintain said crossings, and the approaches thereto, within their respective rights of way, so that at all times they shall be safe as to persons and property.''

It is the view of plaintiff—and the trial court evidently adopted it—that this section imposes an absolute duty on railroads to construct and maintain crossings in a reasonably safe condition. Defendants, on the other hand, contend that the said section re-

quires the exercise of only reasonable care in the performance of this duty, and the action of the trial court in refusing instructions Nos. 33 and 34 offered on their behalf, which were based upon this theory, is now presented for review.

At common law a railway company, in constructing its line of road, was under obligation to provide safe and convenient crossings at highways then existing. (*People ex rel. City of Bloomington v. Chicago & A. R. Co.*, 67 Ill. 118.) But it would appear that, in the absence of statutory provision to this effect, no duty devolved upon a railroad company to construct and maintain a crossing over a highway subsequently created. (*Illinois Cent. R. Co. v. City of Bloomington*, 76 Ill. 447; *City of Bloomington v. Illinois Cent. R. Co.*, 154 Ill. 539.) By legislative enactment in this State, this duty now extends not only to crossings in existence when the railroad was constructed, but to those created afterwards as well, and includes those in cities as well as those in rural communities. (*Chicago & N. W. Ry. Co. v. City of Chicago*, 140 Ill. 309; *City of Bloomington v. Illinois Cent. R. Co., supra*.) Obviously, therefore, so far as the foregoing section relates to highways already existing, it is merely declaratory of the common law, but is an innovation as to streets and roads subsequently laid out, in the latter case shifting the duty of construction and maintenance of crossings, and approaches thereto, from the municipality to the railroad company.

The word "safe," as used in section 8, *supra,* has been frequently construed to mean "reasonably safe." (*Elgin, J. & E. Ry. Co. v. Raymond*, 148 Ill. 241; *Illinois Cent. R. Co. v. Stewart*, 230 Ill. 204; *Morgan v. City of Lewiston*, 91 Me. 566, 40 Atl. 545; *McCloskey v. Moies*, 19 R. I. 297, 33 Atl. 225.) But plaintiff, while conceding such construction of the word "safe," contends that the said section changes the well-established rule of reasonable care in the per-

formance of the duty thereby imposed. In other words, it is argued that the word "reasonably" applies only to the condition required, and not to the means employed to secure it.

In our opinion, the expression "reasonably safe" implies a duty to exercise only reasonable care to bring about that result. To hold otherwise would be to make a railroad company an insurer of the reasonably safe condition of its crossings, irrespective of the degree of care exercised in the construction and maintenance thereof—a higher duty than it owes to its passengers. Manifestly such was not the intent of our Legislature. On the contrary, we are impelled to the conclusion that the statute fixes upon railroads the duty of exercising reasonable care in the construction and maintenance of highway intersections, entitling them to notice, either actual or constructive, of a defective condition, as a prerequisite to a recovery against them such as is sought in the case at bar. (*Chicago & A. R. Co. v. Scranton,* 95 Ill. App. 619; *Cleveland, C., C. & St. L. Ry. Co. v. Arbaugh,* 47 Ill. App. 360; *Brown v. Chicago, I. & L. Ry. Co.,* 177 Ill. App. 599.) In view of the conflicting evidence as to the length of time that the alleged defective condition had existed prior to plaintiff's injury, we think instructions 33 and 34 offered on behalf of the defendants should have been given.

Complaint is also made by defendants that the court erred in giving instruction No. 8 on behalf of the plaintiff. This instruction was in the precise language of the section of the statute hereinabove quoted, and informed the jury that the said statute was then and had been in effect a long time prior thereto.

While numerous authorities uphold the practice of giving instructions containing the very language of a statute, yet we think that where a modified construction has already been placed thereon by our Supreme Court, as in the case at bar, the instruction should be

framed accordingly, otherwise it would be apt to mislead the jury. In such a situation, the better practice is to instruct the jury as to the legal effect of the statute.

It is also contended that the court erred in refusing to give instructions Nos. 35, 36, 37, 38, 39 and 40 on behalf of the defendants.

Instruction 39, which is characteristic of the other five, is as follows:

"The jury are instructed that if the defendants did not expressly or impliedly invite the public to cross Foster avenue at and over their right of way, then they were not bound to keep the whole crossing in a reasonably safe condition for pedestrians; but they had discharged their duty under the law if they exercised ordinary care to keep the sidewalks in a reasonably safe condition for pedestrians and the middle of the crossing in a reasonably safe condition for vehicle and similar traffic. And if you find that the defendants did not expressly or impliedly invite the public to cross Foster avenue as aforesaid, and that they exercised ordinary care to maintain the said crossing where the plaintiff fell in a reasonably safe condition for vehicle and similar traffic, then you must find the defendants not guilty."

It must be borne in mind that the planking upon which plaintiff fell was not part of the sidewalk but was in the middle of the roadway allotted to vehicle and similar traffic, and there was neither crosswalk nor beaten path across Foster avenue at this point. Having provided a sidewalk on each side of the street, it was not incumbent upon defendants to maintain this roadway in a reasonably safe condition for pedestrians. (*Kohlhof v. City of Chicago*, 192 Ill. 249; *Boender v. City of Harvey*, 251 Ill. 228; *City of Aurora v. Hillman*, 90 Ill. 61; *Brown v. City of Chicago*, 135 Ill. App. 126.) Nor can it be said that defendants in any way invited pedestrians to cross at the place where plaintiff fell. And inasmuch as it was also a question

for the jury whether or not the plank road was reasonably safe for vehicle traffic, we are of the opinion that the foregoing instructions should have been given.

As the case must necessarily be retried, we refrain from passing upon the other points raised.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*