Robert MOHR, a Minor, by Chalmer Mohr, His Father, etc., Plaintiff-Appellee,

v.

TOLEDO, PEORIA & WESTERN RAILROAD COMPANY, Defendant-Appellant.

No. 11597.

United States Court of Appeals Seventh Circuit.

May 3, 1956.

J. Lewis Bond, Peoria, Ill., Kavanagh, McLaughlin & Bond, Peoria, Ill., of counsel, for appellant.

John F. Sloan, Jr., John E. Cassidy, Sr., John E. Cassidy, Jr., Peoria, Ill., for appellee.

Before MAJOR, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The plaintiff was riding in the cab of a closed truck driven by his father when it was struck by a freight train. He sued the railroad company for the personal injuries which resulted. The negligence claimed was that the defendant railroad company failed to give plaintiff and his father adequate warning that a train was approaching the crossing, and that the train was being operated at an unreasonably excessive speed. The jury returned a general verdict for the plaintiff and awarded him damages of $10,000. On appeal the defendant claims that the lower court committed error in refusing to submit a special interrogatory to the jury, and that there was no substantial evidence to support the verdict.

At the time of the accident the plaintiff and his father were driving in a southerly direction on Main Street in Eureka, Illinois, a town of about 2,500 persons. That street is also Illinois state route 117, a heavily traveled highway. The defendant's tracks cross Main Street in the center of the business district of Eureka. Plaintiff and his father both testified that the street was slippery and that on the ground there was snow being blown about by gusty winds so that at times they could not see. Each of them further testified that as they approached the railroad crossing the red blinker warning lights were not flashing and that they heard no train whistle or bell. A short distance to the west of the crossing there is a large grain elevator and defendant's tracks so curve to the north and behind the elevator as to make it impossible for persons approaching the crossing from the north to see a train coming from the west until it is almost at the crossing. Another obstruction to the view of persons approaching the crossing from the north is a small elevator office building situated on the north side of the tracks between the elevator and the crossing. There was testimony that at the time of the accident a boxcar was standing on the switch track next to the elevator which further obstructed the view to the west. The plaintiff said that they approached the main track slowly and that he looked in the direction from which the train was actually coming without seeing it. Neither the plaintiff nor his father was ever aware of the train; after driving on the track, the next thing either of them could remember was waking up in the hospital.

Witnesses for the defendant, some of them disinterested, testified that the warning lights were flashing and that they heard the train's bell and whistle as it approached the crossing. One witness, a grain elevator operator for the Eureka Farmers Cooperative Association, testified that he was shoveling snow in front of the elevator office building and about four feet from the north switch track as the plaintiff and his father approached. He heard the whistle of the train and looked up and saw the train coming. When he saw that the plaintiff and his father did not seem to be aware of the approaching train, he began waving his arms and shouting to attract their attention and warn them that they were in danger. He said that the train was then between two and three blocks from the crossing. Most of the witnesses, including the engineer, agree that the train was traveling between 45 and 55 miles per hour.

The general verdict for the plaintiff makes it necessary for us to assume that the jury found all the issues of fact in plaintiff's favor, and under the substantial evidence rule we must accept the jury's finding since there was evidence to support it. Bedwell v. Grand Trunk Western Railroad Co., 7 Cir., 226 F.2d 150; Collins v. Neal, 7 Cir., 219 F.2d 238.

On appeal the defendant seems to make three arguments. It claims that the verdict was not supported by substantial evidence, that a special interrogatory it tendered should have been presented to the jury, and that the plaintiff was guilty of contributory negligence as a matter of law. We shall discuss these arguments in the above order.

As we have already said, the testimony of the plaintiff and his father is sufficient to support a finding that the warning lights were not flashing as they drove by them and that the train did not whistle or ring its bell. Illinois decisions are not entirely clear on whether or not merely proving that a warning device failed to operate while a train was approaching is sufficient to support a finding of negligence on the part of the railroad. Langston v. Chicago & North Western Railway Co., 398 Ill. 248, 75 N.E.2d 363, holds that it is. In that case the plaintiffs' injuries occurred when the automobile in which they were riding ran into the side of a train which was crossing the highway. The complaint alleged and the jury found that the accident was caused by the failure of the railroad company to maintain proper warning lights at the crossing. The court said, 398 Ill. at page 255, 75 N.E.2d at page 366:

"It appearing in this case that there are facts and circumstances in evidence that the appellant undertook to furnish a certain method of warning the public when a train was approaching or on the crossing, and the driver of the car being familiar with this method of warning, it cannot be said, under the facts, that as a matter of law there was no negligence upon the part of the railroad company."

It is true that in the Langston case the warning devices at the railroad crossing were connected to a traffic light at a highway intersection just west of the crossing. When the warning signals were in operation the light at the intersection was red for cars going toward the track, and remained red until the train had passed. Thus a green light at the intersection was an indication that there were no trains on the track just beyond. In the Langston case the court pointed out that at the time the accident occurred the warning signals at the crossing not only were not working but that the light at the intersection was green. The driver was familiar with the way in which the lights were arranged and, therefore, assumed that he could safely cross the tracks. Under those circumstances the court said, 398 Ill. at page 255, 75 N.E.2d at page 366:

"The evidence discloses a case where there was an invitation to cross, with an implied assurance of safety. This is quite different from the ordinary case where the train is, in itself, warning and no invitation is made by the railroad company."

We do not think that the Langston case can be distinguished from the one before us merely because there a green light was also involved. Blinker warning signals which are not working also constitute an invitation to cross a railroad track with an implied assurance of safety from being struck by an approaching train.

A new factor was introduced, however, by the Illinois Appellate Court in Applegate v. Chicago & North Western Railway Co., 334 Ill.App. 141, 78 N.E.2d 793. The case involved a railroad crossing accident, and the court said, 334 Ill. App. at page 151, 78 N.E.2d at page 798:

"However, even if that body [the jury] were to find that the signals failed, that fact alone would not constitute negligence on the part of defendant under the prevailing rule in this state, for it must appear that defendant had actual or constructive notice of the defect, and no such evidence was submitted in this case. Waterbury v. Chicago, M. & St. P. Ry. Co., 207 Ill.App. 375, 380."

The plaintiff in the instant case made no attempt to prove that the railway company knew or should have known about the defective signal.

However, we doubt that this particular statement in the Applegate case, on an issue not directly involved in that case, is the law in Illinois. It is the only statement of its kind that we have been able to find in the decisions of the Illinois courts. The single authority given for the statement is Waterbury v. Chicago,

M. & St. P. Ry. Co., 207 Ill.App. 375, 380. In that case the plaintiff was walking across the defendant's tracks, where the sidewalk crossed the railroad right of way, when she tripped over a raised board between the tracks and fell, injuring herself; no train was involved. The court there held that it was the duty of the railway company to keep the crossing in repair, but that there could be no finding of negligence without proof that the defendant knew or should have known of the dangerous condition that had arisen. This is in line with the general rule on the liability of property owners for dangerous conditions existing on their property. We seriously doubt the possibility that the Supreme Court of Illinois will extend this rule to apply to a case in which a railroad has led the public to expect to be warned of approaching trains by warning devices, and then such warning devices fail to operate.

█ █ Fortunately we do not have. to resolve this apparent conflict because here there was evidence of other acts and omissions on the part of the railroad from which the jury could have properly found negligence. The plaintiff and his father testified that they heard no train whistle or bell. They both testified positively that their hearing was good, that they were not talking, that the truck was not making any unusual noise, and that they were traveling very slowly as they approached and drove upon the track. The jury could well have determined that if the whistle was blown or the bell rung, the plaintiff and his father would have heard them. The Illinois statute provides:

"Every railroad corporation shall cause a bell of at least thirty pounds weight, and a steam whistle placed and kept on each locomotive engine, and shall cause the same to be rung or whistled by the. engineer or fireman, at a distance of at least eighty rods from the place where the railroad crosses or intersects any public highway, and shall be kept ringing or whistling until such highway is reached." Smith-Hurd Illinois Ann.Stats. c. 114, § 59.

Evidence of a railroad's failure to comply with this statute presents a question of negligence to the jury. Monroe v. Illinois Terminal R. Co., 346 Ill.App. 307, 105 N.E.2d 549.

Most of the witnesses placed the speed of the train at between 45 and 55 miles per hour. The engineer himself estimated it at 47 miles per hour. There was no showing that this was in violation of a statute or ordinance, but the jury could have found that in view of the hazards of this crossing the train was being operated at such an excessive speed as to constitute negligence. Applegate v. Chicago & North Western Ry. Co., 334 Ill. App. 141, 149–150, 78 N.E.2d 793. Thus, there was sufficient evidence to support the jury's verdict for the plaintiff.

█ Defendant next argues that the court below committed error by refusing to submit its proposed interrogatory to the jury. The interrogatory requested reads as follows:

"Were the blinker lights located at the crossing in question so located and so operating at the time in question that Chalmer Mohr, by the exercise of due care, could have observed them in time to have safely brought his truck to a stop prior to the time of the accident?"

Rule 49(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that the trial court *may* submit to the jury "written interrogatories upon one or more issues of fact *the decision of which is necessary to a verdict.*" (Emphasis added.) The submission of a written interrogatory, even when the conditions of Rule 49(b) are met, is within the discretion of the trial judge. Lang v. Rogney, 8 Cir., 201 F.2d 88; Smith v. Welch, 10 Cir., 189 F.2d 832. Here the decision of the issue of the proper functioning of the blinker lights was not necessary to a verdict. In holding that the verdict was supported by substantial evidence we have already pointed out two theories, other than nonoperating blink-

er lights, upon which the jury could properly have found for the plaintiff.

The defendant cites Marcus Loew Booking Agency v. Princess Pat, Limited, 7 Cir., 141 F.2d 152, in which this court held that when the jury was properly instructed the trial judge did not abuse his discretion by refusing to submit a requested interrogatory. Defendant, relying on the negative implication of that holding, argues that the jury here was not adequately instructed and, therefore, the interrogatory should have been submitted. Of course, this argument is not controlling because the defendant failed to tender any instruction which was refused and failed to object to any instruction which was given. Defendant lost its right to challenge the instructions on appeal by not objecting at the trial. Lively v. Elkhorn Coal Co., 6 Cir., 206 F.2d 396, 399.

Although it does not actually say so, we construe the defendant's brief as arguing that the trial court erred in not holding the plaintiff guilty of contributory negligence as a matter of law. Since the plaintiff was not driving the truck or interfering with the driver, the only grounds for such a claim would be the fact that he did not warn his father of the approaching train. The only evidence on this was the plaintiff's own testimony. He said that he looked down the track before his father drove the truck upon it and saw nothing. All the witnesses testified that trains approaching the crossing from the west could not be seen until they were very near because the track curved around behind a grain elevator. There was also evidence that a freight car was standing on a siding further blocking the view to the west. As one witness said: "There is very little room. You can't hardly see a train until you get right close to it." The plaintiff and his father testified that they were traveling slowly because the pavement was slippery. This is all evidence from which the jury could have concluded that the train was traveling so fast that it could have been out of sight when plaintiff looked down the tracks and still could have been at the crossing a few seconds later as the truck drove upon the tracks.

There is no prejudicial error in the record; the judgment of the District Court is

Affirmed.